Mr. Vu Good morning, your honors. May it please the court, Tommy Vu on behalf of the appellant Juan Valderama. I would like to reserve two minutes for rebuttal. This court should vacate Mr. Valderama's convictions and remand for a new trial for three independent reasons. First, the district court erred by permitting the prosecutor to comment on Mr. Valderama's post-arrest silence. Second, the district court erred by permitting the prosecutor to make propensity arguments during closing and rebuttal arguments. And third, the district court erred by failing to dismiss Mr. Valderama's motion to dismiss the illegal reentry charge because the 1998 removal order was invalid, which served as the basis of the illegal reentry charge. Turning to my first point, here during both direct examination, closing cross-examination, as well as closing rebuttal, the prosecutor was permitted to comment on Mr. Valderama's post-arrest silence. The jury was left with the impression that for the entire time period, including both pre-arrest as well as post-arrest, Mr. Valderama was completely silent and never provided the reason as to why he came into the United States. And for that reason, the prosecutor improperly commented on his silence. I'm sorry, go ahead Judge McGeehan. Can I just ask, I'm trying to figure out, is there any evidence in the record that there was any evidence before the jury that shows how long Mr. Schwartz, or the timing of Mr. Schwartz's, Agent Schwartz and Mr. Valderama and their interaction? I'm trying to figure out. I think that Agent Schwartz asked a couple questions and then arrested them. Is that your understanding, or can you give me any better sense of what happened here? Yes, Your Honor, I believe the questioning lasted a few minutes. I believe it's on the first couple of pages of the ER, if I could just provide that, Your Honor. But it makes it sound like it was before they were placed under arrest. Are you disputing that? I mean, is that pre-arrest then, or post-arrest that you're challenging? No, Your Honor, the questions that took place in the field when Agent Schwartz asked for their citizenship, what country they were coming from, if they had any documents or papers to be in the United States, we agree that that is all pre-arrest. But the government's own words in their motions in limine is that after that questioning, Agent Schwartz placed both men under arrest and arranged for transportation to the Campbell Border Patrol Station for processing. And that's ER 5. And I don't believe that there's any evidence in the record to show how long that period lasted. I think the only thing that we know is that the questioning, the initial questions lasted less than four minutes. But it's unclear as to how long, but the reasonable inference is after those questions and once Agent Schwartz had enough probable cause to place Mr. Valderrama under arrest, it's unclear what that time period is, but it is post-arrest, and that's what we're contending that the prosecutor did wrong here, which is they indicated that at no point Mr. Valderrama ever mentioned the reason as to why he came into the United States or why he wanted to get arrested, and that impermissibly allowed the jury to infer that he was silent even during the post-arrest period. When you say that the government argued or presented to the jury that Mr. Valderrama never told the agents why he was in the United States, I guess I'm struggling with the same thing Judge McGee has pointed to, which is the record. So I didn't see anything that suggests that there was any evidence or testimony or anything presented to the jury. You've cited a motion to eliminate, which of course the jury didn't hear or see, that there was any testimony about interaction, discussion, questions, anything other than Agent Schwartz and the defendant's testimony about their initial encounter, which you've admitted or agreed was all pre-arrest. But to my review, there's nothing else in the record that suggests there was any other discussion. The questions were when found, it was clear they were talking about the encounter. So what specifically do you rely on, or are you just suggesting this is an inference that the jury could have drawn? Well, Your Honor, in United States v. Baker, the government was held to violate Doyle. Well, that's a different question, and I'm glad to hear your explanation of how you think that case applies, but can you answer my question first, which is what in the record do you rely on? And if there's nothing in the record, fine, you can explain to me why you think Baker controls. Yes, Your Honor. What we have in the record is that Agent Schwartz questioned Mr. Valderrama and another individual, but for purposes of this argument, questioned Mr. Valderrama for less than four minutes. And the reasonable inference is after questioning Mr. Valderrama and determining that there was no permission to be here in the United States, he was arrested and processed at the Campbell Border Patrol Station. And so for that entire time period, although there's never a mention specifically to that time period, United States v. Baker holds that it's the government's duty to make clear that they're only commenting during the pre-arrest period. And that's our argument, Your Honor. So here where the testimony is all about the pre-arrest period, there's no discussion of a post-arrest period at all, which is what I hear you saying. You're suggesting that the government should have nonetheless brought up the issue of a post-arrest statement and offered some kind of explanation to the jurors or asked questions about that? And I guess I wonder about that because that seems like it would be more prejudicial. Your Honor, our position is that in closing argument as well as in rebuttal argument, it was the government's duty to clarify to the jury that all they're speaking of is Mr. Valderrama's silence during this brief encounter. During this brief encounter when the agent Schwartz is asking, do you have any documents? Do you have any citizenship? And so the fact that the government did not clarify or clear that up, the jury is now left with the impression that after Mr. Valderrama was arrested, for however long that time period was, he never mentioned anything. And the questions elicited on examination, I believe, speak to that, where the prosecutor asked Agent Schwartz, did he say anything else to you? And Agent Schwartz replied no. And then the prosecutor also asked, at any time the defendant could have volunteered information, correct? And Agent Schwartz said yes. And the follow-up question to that was, well, did he volunteer any information? And the answer to that was no. And so the jury is left with this impression that for this entire time period, however long that that was, and there is no, there's nothing in the record to suggest that that was minutes or hours, but nevertheless, during this entire post-arrest period, there was no sort of mention of that. But if the prosecutor had done that, wouldn't you have argued, well, it was inappropriate for the prosecutor to mention that because it plants a seed in the jurors' minds that, well, what happened during post-arrest? I'm not sure exactly what the prosecutor could have done here. Well, Your Honor, I don't believe that we would make these arguments if the prosecutor had done that. Obviously, when commenting on a defendant's right to remain silent, it's already a sensitive subject given sort of the importance and the magnitude of it. And even with repeated objections, I believe defense counsel objected based on Doyle and his progeny on at least five or six occasions. The prosecutor could have easily clarified that they're only referring to a very brief time period. And that's our argument here, in that the prosecutor should have, especially given the repeated objections. So the jurors are instructed that the attorneys' arguments, their objections, the court's ruling on objections, none of that's evidence, and they shouldn't consider that. That's between the court and the attorneys. So what you're suggesting is when the parties were addressing objections before the court, that the prosecutor was then required to comment on the legal ruling and the objections that were being made? No, just during the closing argument and the rebuttal argument, after defense counsel would object based on Doyle, certainly the prosecutor in this case could have said, and just to be clear, ladies and gentlemen, we're only referring to this brief time period when Agent Schwartz encountered Mr. Valderrama. Certainly he could have suggested why he came into the United States, but did not do so in this brief time period. And United States v. Baker comments on that, and the actual language says, and it is highly doubtful that the jury understood any such limitation. And so without any limitations suggested by United States v. Baker, the jury was improperly inferring that he was silent during his entire time period, which included the post-arrest period. So in Baker, remind me of the facts of that case. Was there evidence admitted before the jurors about the post-arrest period? I mean, was there discussion about interaction between officers and the defendant post-arrest? In United States v. Baker, after the FBI agents arrested the defendants, the prosecutor argued that there was no word from them after arrest. And so the sweeping statements aimed to infer that the defendants remained silent throughout the entire time period. And the government, without the government sort of limiting these statements to only pre-arrest, the Ninth Circuit found that there was error. Okay, but you just said that they specifically argued post-arrest. So they commented directly on post-arrest silence, which seems distinguishable from what we have here.  What happened in United States v. Baker is that the government argued that there was no word from them. And I'm not 100% certain whether the words after arrest were ever uttered, but I believe that the error was because of the words there was no word from them, which suggested because it was such a broad and vague statement, it included both pre-arrest and post-arrest periods. That takes me back to my first question about that case. Was there testimony and evidence about the agents and the defendant and interaction post-arrest versus what we have here, which is only testimony about the few minutes when the agent encountered the defendant? In Baker, did the FBI agents testify about what happened post-arrest? Did the defendant? Did anybody else? I think, I don't, I unfortunately don't know the answer to your honest question other than the holding in Baker was that the jury could have understood the prosecutor's argument to refer to the defendant's post-Miranda silence. And from inferring from that, I do believe that there was no limitation as there was no limitation in this particular case. I don't know whether or not there was actual testimony about any statements made post-arrest. I do not believe so. And I believe that because the government did not provide sort of a limit to their statements, that's why the Ninth Circuit held that there was error and that I'm not 100% certain, but I believe that that is the case and that's similar to this case and cannot be distinguished. Mr. Vu, I know I've taken you a little bit over your time here, but I did have one more question for you and then I'll give you just a minute or two for rebuttal. But can you just tell me how Palomar Santiago affects this case here? Yes, Your Honor. So, Palomar Santiago can be distinguished on a number of grounds. First, we believe that the government has waived their argument because they didn't present it in their brief. Second of all, Palomar Santiago deals with the issue of removability as charged. In this particular case, Mr. Valderrama does not contend that he was not removable as charged. And because it was a discretionary relief case, it takes it out of the realm of Palomar Santiago. What in that case distinguishes between challenges under 132060 that the underlying charge is a non-removable offense or that there was a due process violation? Can you cite me the language in Palomar that draws that distinction? Well, Your Honor, Palomar Santiago deals with whether the defendant was removable as charged. I believe in that particular case, it dealt with an individual who was in immigration proceedings because they were contending that they should not be removable as they were charged here. Because it's a discretionary relief, Mr. Valderrama would have been exempted from proving exhaustion and deprivation of judicial review because he's contending that the immigration judge failed to advise him of relief that he was eligible for. And so whatever waiver of appeal that may have occurred down below, we argue, was not knowing and intelligent because he wasn't advised of the discretionary relief. And that's the distinction that we draw between Palomar Santiago and in this particular case. But given sort of the significance of the case, at the very least, we would respectfully request that this issue not be decided on limited briefing as the 28Js would provide and remand to the district court for additional briefing. If we were to conclude, just for the sake of argument, if we were to conclude that it wasn't plausible that he was going to receive this relief because of his 15 prior voluntary departures, do we need to reach the other issues you're raising with respect to Palomar Santiago? Your Honor, if you could repeat the question, I'm sorry. Sure. So we're dealing with the three elements of 13-2016. Palomar Santiago said that they are listed with a conjunctive and, meaning the person challenging the underlying removal order has to show all three. So if we find that Mr. Valderrama Mancilla couldn't establish the third prong, the fundamental fairness prong, would we reach any of the other issues? No, Your Honor. If this court does find that it was not plausible for him to receive relief, then the other two prongs would not need to be reached. All right. Judge Lee, do you have any questions? Okay. Again, we took you well over your time, Mr. Rubin. I'll give you a minute or two for rebuttal, okay? Thank you. Mr. Chu, please state your appearance. Thank you, Your Honor. May it please the court, David Chu for the United States. There are three main issues in this case. First, during closing a trial, the prosecutor properly referred to the pre-arrest silence of Mr. Valderrama and never referred to his post-arrest silence. Second, during closing a trial, the prosecutor did not commit plain error by referring to the multiple prior entries of Mr. Valderrama to argue intent in this case. And finally, Mr. Valderrama failed to carry his burden in collaterally attacking his 1998 order of removal. Mr. Chu, let me ask you, is there any evidence in the record? Your Honor, I didn't see it, but I'm just curious, who gave Mr. Valderrama his Miranda warnings, or if there was a statement taken, or was there no sworn statement in this case? Your Honor, there was no, in terms of evidence before the jury, there is absolutely no evidence before the jury with respect to anything that happened post-arrest. And within the record itself, the only thing we do have in the record is what Mr. Vu pointed to was, I think it was at page 5 of the record, where Agent Schwartz, he testified he was only the apprehending agent. That's at page 140 of the record, and then at page 5 of the record. And this was not before the jury. We know that Agent Schwartz called to arrange for transportation for Mr. Valderrama and Mr. Valderrama's companion. And so the inference from that is that Agent Schwartz was not the transporting agent, he wasn't the agent who processed Mr. Valderrama, nor was he the agent who took the post-arrest interview. And Mr. Chiu, I understand that it's permissible to refer to pre-arrest silence, but there's a question here of how the jury was supposed to know that the prosecutor's statements, or questions and closing statements regarding Mr. Valderrama's silence refer only to the pre-arrest period. I think the answer to that, Your Honor, is this context. And in this particular case, with this issue as well as the issue of propensity, context matters. And so in every instance where counsel has pointed to supposed misconduct by the prosecutor, if you look to the language directly before or directly after, you can see that the prosecutor's comment was on pre-arrest silence. For example, we can give an example with respect to the direct examination of the agent, which is at page 123 and 124 of the record. And there the prosecutor was asking about the field interview. Basically asked, you know, Agent Schwartz, when you came upon Mr. Valderrama, what happened? And the agent testified, well, I gave him the field interview. He gave me the answer that he was a citizen of Mexico and that he did not have any legal authority to be here. And the very next question was, other than answering your questions, did he say anything else? And so given that context, it's quite clear that the prosecutor was referring to the field interview. If that weren't clear enough, if we look at the other instances, there are two additional ones. We have the redirect of the agent. That's at page 137 of the record. For the redirect of the agent, the prosecutor focused on and said, you know, Agent Schwartz, you were asked questions about the give and take between you and Mr. Valderrama, i.e., the field interview. And then he said, and how Mr. Valderrama answered those questions honestly. And then the question at issue was, Agent Schwartz, in your experience, people can volunteer things. So it's very clear in that context, again, that the prosecutor was referring to the field interview. And finally, with respect to the cross-examination of Mr. Valderrama, this is at page 193 of the record, the cross-examination of Mr. Valderrama was, Mr. Valderrama, you were finally found by a border patrol. Isn't that right? And Mr. Valderrama explained, yes, I was. I heard a radio crackle, and then I got up and said hi. And then the prosecutor asked, and when that happened, you didn't say anything about wanting treatment. So I think the context for all of those questions, and in addition, I can go through the closing and the rebuttal as well, but the context for all of these comments was always within the pre-arrest point of view. And, Your Honor, I hope I answered your question, because I do want to address something that Judge Bates said, which would also help to answer your question as well, which was with respect to United States v. Baker. United States v. Baker was a case where the comment was solely about post-arrest. I think in Baker it was something along the lines of the prosecutor was commenting about how the defendant, I believe it was a bank robbery case, the defendant had been arrested for bank robbery, and after arrest and being told that he was being arrested for bank robbery, the defendant didn't say anything. He didn't say bank robbery, what are you talking about? And so that was a comment that was solely on post-arrest. And, Judge Merguia, I completely understand your question of perhaps there were some ambiguity here. And, again, I don't think that the context shows any ambiguity whatsoever. In addition, even if there were any ambiguity whatsoever, that if you credit what the appellant has to say, that this refers to both a pre-arrest and post-arrest silence, then I think that any error would be harmless. And this Court's decision in the United States v. Lopez would control. And the reason why any error would be harmless would be because, number one, all of the testimony was about the pre-arrest period. There was no testimony about the post-arrest period. Any post-arrest silence was not stressed. And the evidence was otherwise overwhelming, as evidenced by the jury's verdict in less than an hour. And in the United States v. Lopez, that was a case where this Court found harmless error on worse facts. That case was similar in the sense that the defendant crossed into the United States. The defendant proffered the defense of duress. He said that he was basically trying to escape from drug dealers who were trying to kill him. And the government's response was similar to the response here, which was, you didn't say anything. The difference there, though, was that in Lopez, there was actually testimony about both the pre-arrest period and the post-arrest period. So that when the government referred to silence in general, that silence could refer to both the pre-arrest period as well as the post-arrest period. So there was an error there. But under harmless error review, this Court found that because most of the testimony related to the pre-arrest period, and only some to the post-arrest period, because the prosecutor did not stress post-arrest silence, and because the jury returned a verdict in two and a half hours, that the error was harmless. And specifically, if we looked at the evidence in this case, there is a lot of evidence against Mr. Valderrama with respect to his intent in crossing into the United States. As the prosecutor pointed out, Mr. Valderrama crossed in a remote and rocky area. He crossed in the middle of the night. Instead of walking along roads or the railroad tracks that were in his path, he decided to cross in the wilderness. When he was actually found, he was found hiding under a bush. And either he or his companion was wearing a bootie, which is used to obscure footprints. And finally, you have Mr. Valderrama's statements that he had crossed many times into the United States since 1986 with the specific intent to find work. In other words, to avoid official restraint. So all of this evidence points to the fact that even if there were some ambiguity with respect to the prosecutor's comments, any error would be harmless. Can I ask, I wanted to also ask you about Palomar-Santiago, if you could. And in fact, here on this case, if any, can you talk to me about that a little bit? Yes, Your Honor. With respect to Palomar-Santiago, the government's position, as we laid out in our 28J letter, is that Palomar-Santiago, the mode of analysis there, applies with equal force to this case. That the requirements of 1326D1, 2, and 3 are conjunctive, and you need to have all of them. But that being said, I'm sorry. But I do want to sort of press you a little bit here on some of the remarks that Mr. Gu was making. Because it seems like Palomar-Santiago might be, I don't know, might be distinguishable. Because the underlying challenge to the removal order was based on a criminal conviction that was no longer a removable offense, instead of a due process challenge, which is what we have here. Again, I'm not sure the court spoke to that, but I'm just trying to figure out if that should give us any pause. Your Honor, yes, that is absolutely right. That is a distinguishing factor between these two cases. That Palomar-Santiago was based on the aggravated felony removability, and this case is based on a due process violation. The government's position is that regardless of that distinction, the court is very clear that 1326D1, 2, and 3 is conjunctive, and that all those requirements need to be followed. Now, that being said, I certainly agree with Mr. Vu's proposition that this is a weighty issue, and perhaps it's not something that should be decided on 28J letters, especially when other issues have been fully briefed, specifically with respect to the issue of whether there was a due process violation and whether there was prejudice. And so I do agree that in terms of deciding this particular issue, we should look to the matters that were fully briefed. And in this particular case, there was no due process violation and there was no prejudice to Mr. Valderrama. Now, with respect to the due process issue, first, under due process, the IJ needs to adequately inform and develop with respect to a type of relief. And that exactly occurred here. The IJ, and this is at page 25 of the record, stated that he would automatically consider Mr. Valderrama for a voluntary departure. And then he developed it. This is at page 47 of the record. He developed the fact that Mr. Valderrama had an intermittent residence here in the United States. He developed the fact that Mr. Valderrama had a permanent resident sister. And he also developed the immigration history of Mr. Valderrama, that he had 15 prior illegal entries followed by voluntary returns. And so there was adequate information, adequate development. The crux of Mr. Valderrama's argument is that he was not allowed to develop his purported positive equity of being a seasonal agricultural worker. But as this court's case... Being a seasonal agricultural worker isn't a significant positive equity. In fact, this court described it as an on-again, off-again residence here. That was not sufficient to outweigh that individual's criminal and immigration history. Likewise, in this court's decision in Gonzales-Flores, just having a job is not a significant positive equity. In that case, the person said that, well, I've had a job here in the United States for two or three years. And the court said, well, that's not a significant positive equity. What is a hallmark positive equity are two different ones, namely length of residence and family here in the United States. And the IJ adequately developed both of those facts. And so that's the due process prong. And I could go into the prejudice prong as well. I do note that I am well over time, and I have not discussed the propensity issue at all. But I'm happy to submit or answer any questions with respect to that issue or submit on the brief. Let me see if Judge Beatty or Judge Lee have any questions. No, thank you. All right. And we took you over time. Thank you very much, both of you. Mr. Fu, I'll give you another minute for rebuttal, if you would like. Thank you, Your Honor. Mr. Valderrama was found in the middle of nowhere. And what was before the jury is that he was found in the middle of nowhere, and I believe about 20 miles from Port of Entry. And so what we do know and what we can reasonably infer is that Agent Schwartz was with Mr. Valderrama for a non-insubstantial time period. And what's important to know is that it doesn't matter whether the jury knew that Mr. Valderrama was under arrest. It doesn't matter if the prosecutor explicitly mentioned the word arrest. Because if that was dispositive, that would allow the prosecutor to evade any post-arrest statements if they were to just avoid using the word arrest. And so that's what we would like the courts to keep in mind here is that United States v. Baker indicates that a prosecutor's subjective intent does not matter. And so even if the government intended to only speak about the pre-arrest statements, as long as what the government provides allows the jury to infer that it might have dove into post-arrest period, that's prejudicial. And that's what we're relying on here. And if your honors have any questions about that issue or the propensity, I'm happy to answer them as well. All right. I don't think we have any other questions for you, Mr. Vu, Mr. Chu. Thank you both very much for very helpful oral arguments here today. Thank you. The case of United States v. Valderrama-Mancia is now submitted.
judges: Murguia, Bade, Lee